Richard Antonini, appearing for appellant, and Eric Gassman, appearing for appellee. Good morning, Your Honor. Richard Antonini for the appellant, Paul Martin. I'd like to reserve three minutes for rebuttal. Three minutes. Very good. Go ahead. Thank you. First, in my briefs, I wanted to narrow the issues. This case involved a loan to a company that was designing music royalty software, and the loan was for $50,000. Before the creditor, Mr. Hunter, brought a lawsuit in the Los Angeles Superior Court, and that case did not go to final resolution. I think what happened is Mr. Martin filed for bankruptcy just before a summary judgment hearing, or an order was going to be entered on the summary judgment. So there was no prevailing party. Mr. Martin filed for bankruptcy. Mr. Hunter filed this adversary complaint to determine the debt Mr. Martin owed to him was non-dischargeable under Section 523. And he invoked, I think, at least three sections of 523. And curiously, the bankruptcy judge found that he had not made his case under any provision of 523, except for, I think, 523 to subdivision A. And specifically, that he had only made a case for actual fraud under that statute because he found that Mr. Martin had sold a Porsche that was pledged as collateral for this loan. Actual fraud has been construed by the Supreme Court to include fraudulent transfer of assets or the common law tort of fraudulent conveyance of assets. And it requires a specific intent, an intent to injure the creditor by withholding or transferring assets that the creditor has a right to. Counsel, counsel, can I just interrupt for a second? Sure. You said that it requires an intent to injure, but doesn't it just require an intent to delay or hinder? Does it actually require the additional intent that would be required under ACIP? Well, that's a good question, Your Honor. In my view, my view of it is under the Husky case, what it requires, it requires an intent to hinder the collection of debt. So it does require a specific intent, and it also requires an intent if anything to courts as fraud is done with wrongful intent is actual fraud. The problem here is that the bankruptcy judge seemed to speak with two minds on this particular issue. We're only dealing with a portion. All the other findings the bankruptcy judge made with respect to how the loan was obtained, whether representations were made, the bankruptcy judge found in favor of Mr. Martin. And we don't challenge those, and Mr. Hunter did not file a cross-appeal to challenge those findings. We're only dealing with a portion. Well, let me just get a couple things straight. It's the same $10,000 either way, right? Right. That was going to be the limit of the damages no matter what we did. Yeah. And, I mean, it's not necessarily a principle of appellate jurisprudence that if a judge, you know, looks at two different situations differently, that's necessarily error, right? So why don't we focus on what was error in your mind in the A2 determination? What couldn't the judge do there that the judge should have done? The error was the finding of intent. There were two contradictory findings on intent. Put aside whether they're contradictory. I mean, you know, you've got a fraud claim, and Husky tells us that for 523A2 purposes, since it uses the phrase fraud or false pretenses, it doesn't have to be a representational fraud. And you're right. There were no representational frauds found here. The fraud occurred, or, you know, the effective fraud or hindered delay activity occurred for Judge Robles in selling the car, not telling the security interest holder the car was sold, and not remitting the proceeds, right? So far so good? That's one finding he made, yes. Well, okay, and to Judge Gann's point, you know, if the statute that we're referencing here, the fraudulent transfer statute, says hinder, delay, or defraud, didn't Judge Robles find that this hindered the collection of the debt? He did. Okay. So what didn't he do he should have done? He should have, he then should not have issued the second finding on, which, you know, I quote in my brief, but, you know, let me read it for you. No, I know what you're talking about. Go ahead. This is on page 533 of the record, which is Judge Robles' opinion on the merits. So, you know, it's, oh, wait a minute. I may have that citation wrong. I'm sorry, page 534. None of Martin's conduct qualifies as willful and malicious within the meaning of 523A6. Martin's decision to sell the Porsche and retain the proceeds, all without telling Hunter, was wrongful, but does not qualify as a deliberate and intentional injury. Are you saying that intent to hinder collection of a debt is exactly the same as intent to inflict injury on the creditor? That there's no difference between those two things? I think the intent to injure is a broad category, and the intent to inflict injury on a creditor by selling collateral, that's pledge to the creditor, is a subset of that. I don't think you can say, and the Supreme Court talks about wrongful intent in Husky. I don't think you could say, on the one hand, he has an intent, he has, as a general matter, no intent to injure the creditor, no willful intent. And on the other hand, say, oh, yeah, he does have an intent to injure the creditor by preventing collection of debt. They are, in my view, contradictory. I don't ask. Well, let me ask you another question before we get off that. Go ahead. A6 also requires both a finding of intentional injury and malice. Yes. Is there any requirement in A2 of a finding of malice? I think the answer is no. No, I think the answer is no. I think the Supreme Court in the Husky case said actual fraud, which is the phrase Judge Robles focused on and which is a phrase we deal with here, does not require malice. But you're trying to reconcile two irreconcilable subjects, two irreconcilable holdings, in my view. But that by itself is neither here nor there. The question is was a mistake made in the holding that you're not agreeing with? Yes. Okay. I'm sorry. Go ahead. I was going to say, would you be happier if he'd also ruled against you on A6? I mean, I don't understand. Why should we pick the A2 and overrule the A2 rather than saying, well, he was wrong and not going under A6? I mean, isn't that another way, a perfectly logical way of resolving the contradiction? That may be the way it gets resolved on remand if the court chooses to remand it. We ask for a logically consistent decision. The language I read to you on page 534 of the record didn't have to be there. So, counsel, I mean, what I'm confused about is it seems to me that the Supreme Court in Huston drew the distinction that each one of these provisions of 523, 2, 4, and 6, all involve fraud. They all can involve fraud. But they don't overlap in the sense that they have specific other requirements. A2 is the fraud one. A4 is the fiduciary duty fraud one. And A6 is the intentional tort one. So there is clearly a distinction the Supreme Court is suggesting in the requirements for each of these. And intent may be different to delay or hinder as compared to purposely cause someone injury. And so I'm not understanding your argument with regard to the idea that it has to be remanded because you can't possibly come to a separate conclusion. The argument is that the judge made two different rulings or findings of fact on intent. And they don't mesh with each other. Under Husky, in actual fraud, there has to be an intent to injure the creditor by interfering with the collection of the debt through the wrongful transfer of an asset owed to the creditor. And Judge Robles found that. And then he finds no wrongful intent of any kind on Mr. Martin's part in selling the Porsche to Mr. Martin. And that's another finding of fact entitled to indifference under the clear error doctrine. But first of all, that's not being appealed. And secondly, I think largely to Judge Ferris' point, if what we conclude here is that, well, to the extent we're looking at A6, we're a little bit concerned that Judge Robles imported a motivational requirement that's nowhere in the statute. That really seems to be what he was saying. He wasn't motivated to hurt Mr. Hunter. He did this because he couldn't afford the repairs. And there's nothing motivational in A2 at all, one way or the other. If we were to conclude, for example, that Judge Robles were in error under A6 by looking for this motivational concern, why would that change anything? I mean, if we could observe that, it wouldn't mean anything one way or the other. Well, it would mean that what we are seeking is remand just on this last issue dealing with the Porsche. What was Mr. Martin's state of mind? Under the actual fraud test in A2, as interpreted by Husky, there is a wrongful intent state of mind read into the statute by the U.S. Supreme Court. But the question is, is it the same thing as A6? I'm not— It doesn't have to be. It may not be the same thing, but Judge Robles could have made this distinction. He didn't make the distinction. He just said Mr. Martin had no wrongful intent, period. Counsel, let me— A very, very broad factual finding. Let me stop you for a second. He says in his decision, he says, anything that counts as fraud and is done with wrongful intent is actual fraud, and he cites Husky. Then he says, a fraudulent conveyance constitutes actual fraud under 523A2A if the purpose of the conveyance is to conceal assets from a creditor or hinder the creditor's ability to collect, citing Husky. Then he says, this conduct qualifies as actual fraud. It was wrong for Martin to sell the Porsche without meeting the proceeds. Martin was aware that it was subject to Hunter's collateral and that he thus knew the sale was unauthorized and wrong, and by disposing of it, he hindered Hunter's ability. Doesn't that qualify as a finding that he intended to do what he did, he knew what he did was wrong, and what he did had the effect of hindering him? He didn't say he got injured by this or was willful and malicious, but he committed an act of actual fraud. Isn't that what he found? That's what he said. And then he says just the opposite. Mr. Martin had no wrongful intent at all. No, no, he doesn't say that. He says the decision to sell and retain the proceeds was wrongful, but does not qualify as a deliberate intentional injury. Well, isn't it? I argue that deliberate and intentional injury, the intent to hinder collection of a debt, is a deliberate and intentional injury. I mean, what else is it as a matter of common sense? All right. I'm sorry, Judge Leifert, I cut you off. If that's the case, then that's all we need to worry about. I mean, this comparison between an A2 and an A6 to me isn't getting us very far. Well, and counsel, aren't you suggesting then that every fraudulent conveyance claim is actually both a fraud claim under A2A and automatically becomes an A6 claim? The debtor is absolutely required to have the debtors charged under both provisions. That's not exactly what I'm saying, Your Honor. What I am saying is that under A2, the actual fraud as construed by Husky requires a wrongful intent, an intent to injure the creditor by depriving the creditor of collateral, by depriving the creditor of a means of collecting the debt. And Judge Robles said that. And then he says, as construing A2 as applied in this case, there was no wrongful intent at all. I just don't think the judge's findings can rest on a contradiction like that. I don't think we're reading the findings the way you are. Pardon? I don't think we're reading the findings the way you are. Perhaps not. Yeah. Okay. Thank you. Mr. Gassman, over to you. Hello. Good morning, Your Honors. Am I coming through okay? Yes, you are. Thank you. I think I'll try and keep this very brief as I don't want to rehash what Your Honors have been questioning. But it's, again, as Mr. Antignori said, this is one simple issue that this entire appeal is based on, and it's the issue of intent. Now, as Judge Robles ruled, found actual fraud, which sounds like, while Your Honors are very familiar with Husky, the very essence of Husky is that it distinguished a fraudulent transfer from what would have otherwise historically had to have been found under an A6. So where the appellant is trying to argue about this conflicting intent, it's actually really quite simple. The intent to be focused on with Husky was the intent to do something you knew that was wrong, i.e., the transfer. It wasn't the intent to deliberate injury that would be akin to an A6, a willful and malicious intent. But it's rather simply Mr. Martin knew that the Porsche was collateral. He knew that selling it was wrong, and he did it anyway. In a way, it's kind of like the difference that the Supreme Court drew in Kava'ohau v. Geiger about intending the act and intending the injury. I think you're saying that for A2 purposes, intending the act is sufficient. But for A6, you've also got to intend the result, the consequences. Is that a fair summary? Correct. I have a more basic question that just confuses me here. It involves the Husky decision. There's not much you can do about it, maybe. The issue is, in this case, he sold the Porsche for $10,000. In Husky, he transferred assets out of a company to another company that he owned. No consideration was left in the company that was making the transfer. In this instance, he was paid. How is this a not-equivalent-value transaction that results in a fraudulent transfer? Well, it's still considered a fraudulent transfer. Here was the property that he didn't have the right to transfer it in the first place because it was collateral. And he knew it was given up as collateral for the loan. So, is it that he didn't have the ability to... It was titled in his name. The other guy didn't record anything lien-untitled, which would have required the creditor who made the payment to know that the money had to go somewhere other than to Mr. Martin. What I'm trying to say is, he had the right to transfer it. Where we get into trouble here is what he did with the $10,000 after he received it. He didn't turn it over to the creditor. In fact, he did whatever he did with the $10,000. The point I was trying to draw is there's a distinction between a transfer of an asset where you get no consideration for it, and you leave the entity without any value, versus this transaction where he traded the car for what appeared to be reasonably equivalent value of $10,000 at the time of the transfer. That's different, isn't it? I understand exactly what you're saying, Your Honor. But two things I would say. Number one, you are correct, and there was quite some discussion in the lower court that Mr. Hunter didn't record anything. Now, the recording of a lien isn't the prerequisite to actually having a lien. That's merely providing notice. In that sense, fine, the dealer, the purchaser of the Porsche wasn't on notice, and there obviously was no issue with that. But it was still provided as collateral. Can I offer a thought? I agree with Judge Gann. I think that the fraudulent transfer frame here is not the most obvious one to get to an easy result. Because in the fraudulent transfer frame, while you look at the intent of the transferor, you usually look to the transferor to get the thing back. And that's what's totally different here. It was the transferor who got the consideration. You're right. There probably would have been a difficult time under the fraudulent transfer laws pursuing the transferee because they were absolutely in good faith. They gave value for the thing and had no idea their transaction was voidable. The pursuit here has to be against the transferor, which is just not the way the fraudulent transfer laws typically work. I mean, this really is a conversion that may also be a fraudulent transfer to the extent that it was the retention of the funds after selling it that was wrong, right? It wasn't necessarily the selling it, per se. Well, I would argue it was both because the very nature of having collateral is that you can't dispose of it. I mean, it's a thing you can hold. You can go and retrieve. But at the end of the day, he didn't have a right to the car. The creditor didn't have a right to the car. He had a right to the $10,000. This was just security for repayment of the debt. To the value of the collateral, he had a right to that value. He didn't have a right to control the car. And, in fact, the evidence is he didn't want the car, didn't want to take the car when it was in default, had the opportunity to exercise his rights over the vehicle and chose not to. The sale occurred in 2015. The bankruptcy case was filed in 2017. So we have an extensive period of time between the transaction occurring, the transfer of the money, and any kind of a claim that, hey, wait a minute, you've now sold my collateral. So I agree with Judge Lafferty. This looks more like conversion than any kind of transaction. And then we have the problem of what if he intended to repay the money after he needed the $10,000 right now, but he had other assets, and two years are going to go by before he's going to file bankruptcy. So maybe he never intended to convert his property and not pay. We don't know that. Well, I would again say he, regardless of the recording of a lien, doesn't define if he has a right to that property. Well, he has a contractual right. Well, yeah. And that's attachment. The attachment means you have a contractual right to the security, right? Yes. As opposed to perfection, which is you tell the world, I'm in line right here, and you're behind me. Right. So the perfection... But still, you go back to Judge Kahn's point, I hate to belabor this, but I think it's right, is the transfer here is the sale. What's wrong with the sale? The answer is not a whole lot except for the fact that the wrong person got the money. So when you start looking at... And this gets complicated because obviously we do use badges of fraud in connection with fraudulent transfer matters, and they're intended to show something that nobody ever admits, which is, yeah, I intended to defraud someone. But where are the badges of fraud that show that as to the transfer, it was wrongful? The transfer being the sale. Well, that's, number one, what Husky provided, that with a fraudulent transfer, you don't have to prove the intent, i.e., the badges of fraud. I mean, that was kind of the whole premise of the justices' argument with... Well, it is a fraudulent transfer. The fact he transferred an asset that he wasn't entitled to transfer, number one... Explain that to me. He has a security interest. Your client has a security interest in the car. He doesn't have ownership or title to the vehicle. He has a right that upon disposition of the collateral, he has a lien to get paid. He doesn't have the right to stop him from transferring title if he wants to. No, but I'm sorry, Your Honor. But contractually and what the note defined, he was not authorized to sell it. It was not just a liquidated value, if you will. It was specifically, you know, you are to provide notice prior to, and I might add, and I'm jumping a little bit, but the car was sold in around 2015. Well, yes, Mr. Hunter, you know, didn't go immediately to try and collect the car in 2010 or 2011, but the e-mail chain and what the testimony indicated was, yes, Mr. Hunter was like, well, if you can't pay me, then where's the car? I'll collect the car, to which, as the evidence was put forward in e-mail chains, he ignored it, he denied it, and then, you know, several months later said, oh, I sold it and I needed the money.  So where you can apply the fraudulent transfer, yes, he did sell it. Yes, he, you can arguably say he took property and liquidated it to avoid having to pay it, to avoid… Well, in derogation of a property right of your client is the point, right? I'm sorry? In derogation of your client's property rights. Exactly. So even if the sale, I mean, if this were constructive fraud, for example, you might argue you wouldn't win because it was for fair value. You know, as between the buyer and the seller, it was fair value. Sure. But the actual fraud here is the piece that your client had an admittedly unperfected but contractually enforceable security interest, and when the property is sold without knowledge of your client, without remitting the proceeds to your client, that's an actual fraud. Yes. The weird thing is it sounds just like conversion. This does get a little circular, so… And counsel… Yes, you're right. But you're right. I mean, it is the elements, and if you do break it down, yeah, it is very similar to, you know, what a conversion cause of action. Okay. And counsel, where we struggle, where I'm struggling, is the idea that let's assume he breached the contract. He had an obligation to inform him that he was going to sell the car, breach a contract. It could be the lying about what I had done and not disclosing to you, and then covering it up, concealing the activity afterwards. I guess it could lend some concept that this was done with some unlawful purpose, because just simply selling it and not turning over the proceeds in and of itself may not be a fraudulent transfer, but potentially, I guess, lying to you about it, not giving you information about it, and then somehow trying to avoid it in bankruptcy. Well, and I think this is where you do get into… And I can… I certainly see where your honors are going back and forth with, like, the concept of conversion, because it is very… I mean, fraudulent transfer schemes, and I would emphasize they're schemes in the plural. And I don't mean to be nitpicky, but it isn't just a transfer for no equivalent value. But, you know, whether it's to transfer title to a house for a token or to otherwise somehow transfer property, because that's the only way you can liquidate it to then disperse assets, for example. I mean, these are varieties of fraudulent transfer schemes. But, and quickly, I guess this is where I would come to say this is where Judge Robles, in his determination of the facts and the testimony of Mr. Martin, where, quite frankly, early on, he noted Mr. Martin's testimony was simply not believable. But yet, there's further testimony in the record that cited he knew the car was collateral, he couldn't afford it, and he even acknowledged that he should have contacted my client. Okay, I'm going to stop you because you've just run out of time. Mr. Antonini spoke right up to his 15 minutes, too, so to keep things even-handed, I'll stop you at this point. I want to thank both sides for very good arguments and the matters submitted. Thank you, Your Honor. Thank you. Madam Clerk, you'd go ahead with the next case, please.
judges: Faris, Lafferty, Gan